## FEDERAL UNDERWRITERS EXCHANGE v. RATTLER et al.

### No. 6189.

Court of Civil Appeals of Texas. Texarkana.

Jan. 24, 1946.

Rehearing Denied Feb. 7, 1946.

Touchstone, Wight, Gormley & Touchstone, of Dallas, and Guinn & Guinn, of Rusk, for appellant.

Fulmer & Fairchild, of Nacogdoches, for appellees.

HARVEY, Justice.

Eliza Rattler, widow; several minor children; and Zettie Mae Rattler, an adult daughter of Nar Rattler, were awarded judgment upon a jury verdict against ap-

pellant for compensation for the death of Nar Rattler as the result of an injury alleged to have been sustained by him on February 16, 1944, while in the course of his employment with Rube Sessions. At the conclusion of the testimony adduced upon the trial of the case in the district court of Cherokee County, Texas, appellant, defendant below, filed a motion for an instructed verdict and upon the return of the jury verdict a motion for judgment non obstante veredicto was likewise filed, which motions were overruled by the Court. Subsequently, on May 17, 1945, its motion for a new trial was overruled, from which action of the Court notice of appeal to this Court was given.

There is evidence in the record to the effect that Nar Rattler, a negro about sixty-eight years of age, was employed by one Rube Sessions as a sawmill laborer in Cherokee County on February 16, 1944, the date on which the employee is alleged to have received an accidental injury while in the course of his employment which was the producing cause of his death that occurred two months later on April 16. On the date on which he is alleged to have received his injury, Rattler was engaged at the sawmill in loading slabs which were being handed to him by a co-worker from the top of a stack about 12 feet above him, and while so employed a slab variously estimated to weigh from five to fifty pounds fell from the top of the stack and struck Rattler across the shoulder. While it is not clear that any one actually saw the slab strike Rattler, the attendant facts and circumstances justify the conclusion that he did receive an injury caused by the falling slab on the occasion in question. One laborer testified that he didn't see the slab strike Rattler but "saw it when it was taken off." Rattler was carried to a doctor who bound his shoulder and then he was taken to his home. There is quite a bit of testimony as to his condition before and after the time that he is alleged to have been struck by the slab, there being considerable evidence with respect to the bruises on his body, his coughing up blood, and so on.

■ The evidence developed the fact that neither Rattler, nor any one doing the same type of work in which he was engaged, had worked substantially the whole of the year immediately preceding the time of his injury in the same or similar employment in the same locality or in a neighboring locality. Therefore, it was neces-sary in determining Rattler's weekly wage rate to compute it under Subsection 3 of Section 1, Article 8309. Appellant assigns error to the action of the court in submitting the issue of an average weekly wage, in the form in which it was given, which issue was framed as follows:

Issue No. 7:

"What sum of money do you find from a preponderance of the evidence would represent an average weekly wage of Nar Rattler, fair and just both to plaintiffs and defendant?"

The jury answered this issue by saying that $20.83 would be such an average weekly wage. We are of the opinion that the issue as submitted is in conformity with the statute, and somewhat similar submissions have been approved in various decisions. We do not think that the statute in question, Subsection 3 of Section 1, Art. 8309, contemplates that in such a situation as the one under advisement the weekly wage of an employee is to be limited to and computed upon the basis of the wages which he actually received. It is sufficient if the jury is permitted to arrive at an average weekly wage under the attendant facts and circumstances in evidence in such manner as may seem just and fair to both parties. This precise question has been passed on by this court in the case of Traders & General Insurance Co. v. Locklear, Tex.Civ.App., 119 S.W.2d 153; see also the case of Traders & General Insurance Co. v. Burns, Tex.Civ.App., 118 S.W. 2d 391.

■ A further ground of error presented by appellant is that counsel for appellees committed reversible error in arguing to the jury that the plaintiffs, in the event of recovery by them, would receive weekly compensation payments of only 60 per cent of Rattler's average weekly wage. In this connection it is pertinent to point out that the plaintiffs were suing for a lump-sum settlement and alleged that they would be entitled to only 60 per cent of the average weekly wage for the statutory period in the event of recovery; also, there was evidence that about a week after the date of the alleged injury the insurance carrier had sent a check to Nar Rattler for the sum of $12.50. Counsel for the plaintiffs in the court below in discussing the evidence as to Rattler's average weekly wage, which was in a large part circumstantial, together with other evidence placing his wages actually received at $24. and

downward, stated to the jury that $12.50, paid by the insurance carrier would be 60 per cent of $20.83. In the state of the record and the manifest difficulty presented in determining the employee's average weekly wage, we think that this argument was proper. The jury was told nothing that they did not already know from the evidence introduced before them, and the deduction made by plaintiffs' counsel by reason of the amount of the payment made to Rattler was a legitimate one, such payment being a circumstance that the jury might consider along with other evidence in arriving at a just and fair weekly wage rate.

■ The point of error presented by appellant with respect to jury misconduct is the fact that the jury discussed the $12.50 payment made to Nar Rattler about a week after his injury and discussed what amount of which such $12.50 payment would be 60 per cent. None of the jury testified that there was any agreement to set a weekly wage rate in such a sum as that his weekly compensation payments would be $12.50. The effect of their testimony is that in arriving at an answer to issue No. 7 they took into consideration the payment made by the insurance carrier and a computation showed that 60 per cent of $20.83 would be $12.50, the amount of the payment made to Rattler. Inasmuch as the petition read to the jury alleged that the payments to be made in the event of recovery would be 60 per cent of the weekly wage rate and the check payable to Rattler was for $12.50, it is our opinion that there was no error on the part of the jury in considering these matters, together with other evidence in the record, in arriving at and fixing a fair weekly wage.

■■ Appellees, plaintiffs below, introduced a witness to prove their case in chief. However, this witness gave testimony which in effect disproved the case of plaintiffs, in substance testifying that on February 16, 1944, Nar Rattler was working at the sawmill loading slabs and that he worked with him; that on no occasion that day did anything out of the ordinary happen to Rattler nor was there anything unusual about his appearance. Over the objection of the defendant the plaintiffs were permitted to impeach this witness by prior inconsistent statements, including a written statement which was entirely contradictory to his testimony given from the stand. It is elementary, of course, that one may not impeach his own witness merely because of a failure on the part of the witness to give testimony helpful to the one who introduces him, or because of disappointment due to the fact that the witness refused to give expected testimony. The rule in such cases is that if the witness gives testimony which in effect in some degree disproves the case of the party who offers him, then such party may claim surprise and offer impeaching evidence. Morgan v. Stringer, 120 Tex. 220, 36 S.W. 2d 468; Tex.Jur., Sec. 304, page 194. In this particular case the evidence of the witness negatived the contention of plaintiffs and destroyed the basis of their case; in other words, he testified, in contradiction to statements previously made by him, that nothing unusual happened to Nar Rattler on the date it is claimed he was injured; that he was working with him that day and at no time did he see anything unusual about his appearance. The trial court properly admitted the impeaching testimony and also quite properly instructed the jury that it was limited to such impeachment.

■ There was quite a bit of testimony introduced on the trial of the case to the effect that Zettie Mae Rattler, the 28-year-old daughter of Nar Rattler, was dependent upon him for support at the time of his injury and at the time of his subsequent death. The evidence indicated that she had never earned her own living, was almost an invalid, and was dependent entirely upon her father for support at the time of his death. In response to an issue submitted to them the jury found that she was dependent on Nar Rattler, which jury finding has ample support in the evidence. We think that under the statute and the decisions an adult dependent child is entitled to share compensation benefits the same as a minor child. Art. 8306, Sec. 8a, R.C.S. of Texas; Traders & General Insurance Co. v. Yarbrough, Tex.Civ.App., 181 S.W. 2d 305. None of the authorities to which we are referred by appellant is to the contrary, nor is there any authority of which we are aware in conflict with this view.

The other points of error presented by appellant have been considered and are overruled.

No reversible error being apparent from the record, the judgment of the trial court is affirmed.