**PENTAD JOINT VENTURE, et al., Appellants,**

v.

**The FIRST NATIONAL BANK OF La GRANGE, Texas, Appellee.**

No. 3–89–157–CV.

Court of Appeals of Texas, Austin.

June 13, 1990.

Rehearing Overruled Sept. 12, 1990.

Nicolai von Kreisler, Susan J. Haney, von Kreisler & Swanson, P.C., Austin, for appellants.

David Guerra, Small, Craig & Werkenthin, Patrick J. O'Connell, O'Connell, Van Shellenbeck & Jamail, Austin, for appellee.

Before POWERS, JONES and EARL W. SMITH *, JJ.

---

* Before Earl W. Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003 (1988).

JONES, Justice.

This is an appeal from a summary judgment rendered in favor of First National Bank of La Grange (the bank), appellee, against Pentad Joint Venture (Pentad), Leon A. Whitney, and Terry B. Burger, appellants. The bank brought suit against Pentad, as maker, and Whitney and Burger, as guarantors, to collect the deficiency remaining due on three promissory notes after foreclosure and sale of the real property pledged to secure the indebtedness. Pentad and Whitney filed an affirmative defense and several counterclaims. Burger filed only a general denial. The bank moved for summary judgment, and the trial court granted the bank's motion on its claim as well as Pentad and Whitney's counterclaims. We will affirm the summary judgment as to the bank's deficiency claim (except attorney's fees) and as to one of the counterclaims; we will reverse the summary judgment as to the remainder of the counterclaims and as to the bank's claim for attorney's fees, and we will remand those portions of the cause to the trial court.

In 1986 Pentad executed promissory notes in the amounts of $300,000, $400,000, and $100,000 payable to the bank. Whitney and Burger executed guaranty agreements whereby they agreed to guarantee payment of Pentad's indebtedness to the bank. In addition, the bank took deed-of-trust liens against three tracts of land situated in Williamson and Travis Counties. In 1987 Pentad defaulted on the payment of the notes, and the bank foreclosed on the three tracts. At the trustee's sale, the bank acquired the three tracts for an aggregate bid of $530,110. At the time of the sale, the bank had appraisals of the three tracts showing the combined market value of the tracts to be at least $776,000. After acquiring the tracts, the bank reported to the IRS that the aggregate fair market value of the tracts was $757,300.

In response to the bank's suit to recover the deficiency on the notes, Pentad and Whitney (but not Burger) pleaded an affirmative defense and four counterclaims against the bank. The bank filed a motion for summary judgment as to its claim as well as the counterclaims. Pentad and Whitney filed a response to the bank's motion; Burger did not respond. The trial court granted summary judgment for the bank on its claim and against Pentad and Whitney on their counterclaims. Appellants present a sole point of error, asserting that the trial court erred in rendering the summary judgment against them.

We note at the outset the well-established standards for granting a summary judgment:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

For a plaintiff to obtain summary judgment, it must establish each element of at least one ground of recovery as a matter of law. Even where the plaintiff does so, however, the defendant, as the non-movant, can defeat the summary judgment by presenting summary judgment proof that raises at least an issue of fact as to an affirmative defense. *Life Ins. Co. of Virginia v. Gar–Dal, Inc.,* 570 S.W.2d 378, 381 (Tex.1978). In the present case, appellants assert primarily that fact issues exist regarding their affirmative defense and counterclaims.

## AFFIRMATIVE DEFENSE

Appellants assert that the summary judgment as to the bank's deficiency action was improper because the purchase price the bank paid for the property at the trustee's sale, which was offset against the balance due on the notes, was "inadequate"; i.e., the purchase price was less than the fair market value of the property. In Tex-

as, however, mere inadequacy of consideration does not render a trust deed foreclosure sale void if the sale was "legally and fairly made." *Tarrant Sav. Ass'n v. Lucky Homes, Inc.*, 390 S.W.2d 473, 475 (Tex.1965); *Maupin v. Chaney*, 139 Tex. 426, 163 S.W.2d 380 (1942). There must also be evidence of some irregularity, though slight, that caused or contributed to a sale for a grossly inadequate price. *See American Sav. & Loan Ass'n v. Musick*, 531 S.W.2d 581, 587 (Tex.1975); *Sparkman v. McWhirter*, 263 S.W.2d 832, 837 (Tex. Civ.App.1953, writ ref'd); *see also Allen v. Pierson*, 60 Tex. 604 (1884) (enormous inadequacy of selling price accompanied by very small irregularities in the sale are sufficient to void sale).

These rules have been applied in suits for deficiency judgment and similar claims where the borrower sought a recovery of damages or an offset rather than the setting aside of the foreclosure sale. *See, e.g., Greater Southwest Office Park, Ltd. v. Texas Commerce Bank, N.A.*, 786 S.W.2d 386 (Tex.App.1990, writ denied); *Flato Bros., Inc. v. Builders Loan Co.*, 457 S.W.2d 154, 158 (Tex.Civ.App.1970, no writ). As the Supreme Court stated in *Lucky Homes*, a suit for deficiency:

> [I]f the sale is valid the mortgagee is entitled to judgment for the amount of the note, interest and attorney's fees, less the amount received at the trustee sale and other legitimate credits. If the sale is invalid and title to the property has passed to a third person or the property has been appropriated to the use and benefit of the mortgagee, the mortgagor is entitled to have the reasonable market value of the property credited on the note....

390 S.W.2d at 475.

Citing *Halter v. Allied Merchants Bank*, 751 S.W.2d 286 (Tex.App.1988, writ denied), appellants argue that when a mortgagee purchases real property at the trustee's sale for a grossly inadequate amount, no showing of irregularity is necessary to defend against a deficiency action. However, because the language in *Halter* on which appellants rely is dicta, and because we

view it as contrary to *Lucky Homes*, we decline to follow it. *Cf. Savers Fed. Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1503–05 (5th Cir.1989).

Appellants further argue that the summary judgment evidence raises an issue as to "unfairness" in the trustee's sale. They argue that this "unfairness" resulted from the bank's conduct at and before the sale; there is evidence that the bank knew, before the sale, that in the event of foreclosure it would bid only 70% of the fair market value, yet it did not disclose its intention to appellants. Appellants assert that if they had known ahead of time that the bank's bid would be less than fair market value, they could have prevented the inadequate sales price.

Traditionally, the mortgagee in Texas has been required to hold a fair sale; that is, the mortgagee must not take affirmative steps to adversely affect the sale price at the foreclosure. *See Biddle v. National Old Line Ins. Co.*, 513 S.W.2d 135, 138 (Tex.Civ.App.1974, writ ref'd n.r.e.); *see also Charter Nat'l Bank v. Stevens*, 781 S.W.2d 368, 371 (Tex.App.1989, writ denied). These are the so-called "chilled bidding" cases, in which courts have recognized that a mortgagor, even though in default, has a right to an orderly disposition of the property, and if a defect or irregularity deters third parties from bidding, then an action for damages should lie under a theory that the wrong committed resembles that of conversion. *Charter*, 781 S.W.2d at 374. These cases require the mortgagee "not to discourage bidding by acts or statements made before or during the sale." *Biddle*, 513 S.W.2d at 138.

 Therefore, Texas law recognizes that a mortgagee is under a duty to avoid affirmatively deterring third party bidding by acts or statements made before or during the foreclosure sale. Conversely, a mortgagee is under no duty to take affirmative action, beyond that required by statute or deed of trust, to ensure a "fair" sale. *See Lucky Homes*, 390 S.W.2d at 476 (implicitly holding that a mortgagee is under no duty to disclose its intended bid to the mortgagor). Appellants argue that the

bank's failure to disclose its intention to bid less than the market value effectively chilled the bidding. However, there is no summary judgment evidence that the bank made any statement or committed any act that discouraged third parties from bidding, or that the sale was otherwise unfair. We conclude that the mortgagee's failure to disclose its intention to bid less than fair market value at any foreclosure sale is not a defect or irregularity sufficient to invalidate the sale and require the mortgagee to credit the property's fair market value against the indebtedness.

Appellants cite several cases for the proposition that a mortgagee is under a "trust arrangement" with the mortgagor, thereby creating a duty of good faith on the part of the mortgagee to conduct a foreclosure sale so as to produce the highest possible price for the mortgagor. *See Olney Sav. & Loan Ass'n v. Farmers Market of Odessa, Inc.*, 764 S.W.2d 869, 871 (Tex.App.1989, writ denied); *Coleman v. FDIC*, 762 S.W.2d 243, 245 (Tex.App.1988, writ granted); *Lee v. Sabine Bank*, 708 S.W.2d 582, 584 (Tex.App.1986, writ ref'd n.r.e.).

■ To impose an affirmative duty on the mortgagor, these cases rely on the language from *Biddle* that a mortgagee is "bound to conduct [a foreclosure sale] fairly so as to produce as good a price as possible." 513 S.W.2d at 138. As discussed above, *Biddle* does not impose such an affirmative duty. The Texas Supreme Court has never recognized an implied affirmative duty that the mortgagee produce "as good a price as possible" at the foreclosure sale. *See Lucky Homes*. Therefore, we decline to recognize such a duty. *Cf. Reetz*, 888 F.2d at 1503–08.

Since there is no summary judgment evidence showing that the bank chilled the bidding or that the sale was tainted by some other cognizable irregularity, and since the bank owed appellants no affirmative duty to produce as good a price as possible, we hold that the trial court did not err in granting the summary judgment for the bank on its deficiency claim.

## COUNTERCLAIMS

■ In order to obtain summary judgment as to Pentad and Whitney's counterclaims, the bank as movant had the burden of conclusively negating at least one essential element of each of Pentad and Whitney's causes of action. *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934 (Tex.1972).

■ Pentad and Whitney's first counterclaim alleges that the bank failed to conduct a commercially reasonable foreclosure sale. In Texas, a *chattel* mortgagee must conduct a commercially reasonable foreclosure sale in order to recover a deficiency based on the bid amount. *See Tanenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d 769 (Tex.1982); Tex.Bus. & Com.Code Ann. § 9.504 (Supp.1990). However, foreclosure of *real property* under a deed of trust need not be at a "commercially reasonable" sale, and the failure to conduct a commercially reasonable foreclosure sale of real property is not actionable. *See Huddleston v. Texas Commerce Bank—Dallas, N.A.*, 756 S.W.2d 343, 347 (Tex.App.1988, writ denied).

■ Generally, the mere failure of a party to state a cause of action may not be attacked by motion for summary judgment, because to do so would deny the non-moving party an opportunity to amend its pleadings. *Peek v. Equipment Serv. Co.*, 779 S.W.2d 802, 805 (Tex.1989); *Texas Dep't of Corrections v. Herring*, 513 S.W.2d 6, 9 (Tex.1974). However, a party may plead itself out of court by affirmatively pleading facts that negate his cause of action. *Herring*, 513 S.W.2d at 9. Here, by pleading that the property foreclosed on was real property as opposed to personal property, Pentad and Whitney affirmatively negated their cause of action for failure to conduct a commercially reasonable sale, thus making summary judgment for the bank proper.

■ Pentad and Whitney's remaining counterclaims purport to state causes of action for breach of the duty of good faith and fair dealing, common-law fraud, and unconscionability under the Deceptive

Trade Practices Act, Tex.Bus. & Com.Code Ann. §§ 17.41–17.63 (1987 & Supp.1990). The bank's motion for summary judgment asserts that these claims must fail because the bank bid 70% of the property's fair market value, apparently on the theory that 70% of the fair market value is, as a matter of law, not grossly inadequate. However, the bank's summary judgment proof does not contain conclusive evidence of the fair market value of the property. Pentad and Whitney submitted evidence that the fair market value was more than twice the appraised value on which the bank's 70% bid was based. Therefore, we conclude that the bank did not conclusively show that its bid was not grossly inadequate.

■ Moreover, unlike the counterclaim for failure to conduct a commercially reasonable sale, Pentad and Whitney did not plead facts that affirmatively negate these causes of action. It may be that Pentad and Whitney have not, in fact, stated causes of action for breach of the duty of good faith and fair dealing, common law fraud, or DTPA unconscionability. *Cf. Lovell v. Western Nat'l Life Ins. Co.,* 754 S.W.2d 298, 302–03 (Tex.App.1988, writ denied) (no duty of good faith and fair dealing between mortgagor and mortgagee); *Tempo Tamers, Inc. v. Crow–Houston Four, Ltd.,* 715 S.W.2d 658, 669 (Tex.App.1986, writ ref'd n.r.e.) (failure to disclose information is not fraudulent unless one has an affirmative duty to disclose); *La Sara Grain Co. v. First Nat'l Bank,* 673 S.W.2d 558, 566–67 (Tex.1984) (lending of money, in and of itself, does not involve either a good or a service). However, even assuming that their pleadings are currently insufficient, Pentad and Whitney must, under *Herring,* be given an opportunity to amend their pleadings after the bank files special exceptions. The trial court's summary judgment here did not allow them that opportunity. The points of error relating to these counterclaims are sustained.

## OTHER CLAIMS

■ *Appellants* also contend that the summary judgment should be reversed be-

cause the bank failed to produce summary judgment evidence to support its claim for attorney's fees. We agree. The bank sought attorney's fees on the basis of express provisions contained in the three promissory notes. The trial court awarded attorney's fees of $40,590.28, representing 10% of the total principal and interest then due. Appellants argue that there was no evidence of the reasonableness of these fees. The bank responds that the notes expressly provide for a recovery of an additional 10% of the unpaid principal and interest then due, in the event of a default in payment. The bank argues further that it was not required to produce evidence of reasonableness, because appellants did not plead, as an affirmative defense, that the amount of contractually stipulated fees was unreasonable. *See F.R. Hernandez Constr. Co. v. National Bank of Commerce,* 578 S.W.2d 675 (Tex.1979).

The $300,000 and $400,000 notes did contain provisions that, in the event of default, the maker agreed to pay "an additional sum not less than ten per cent (10%) of the unpaid principal and interest then due on the note as attorney's fees." However, the $100,000 note did not contain such language. Rather, that note recited that on default and acceleration the maker could be required to pay the note holder's "reasonable costs and expenses," including "reasonable attorney's fees."

Since the bank did not present proof of reasonableness as to the $100,000 note, it did not meet its burden as to that issue. *See Nguyen Ngoc Giao v. Smith & Lamm, P.C.,* 714 S.W.2d 144, 148 (Tex.App.1986, no writ). Accordingly, the award of attorney's fees in connection with the $100,000 note was improper, without regard to the affirmative defense of unreasonableness. Thus, even assuming that the attorney's fee provisions in the other two notes are sufficient to allow an award of 10% attorney's fees without additional evidence of reasonableness, the present award of $40,000 is more than 10% of the amounts owing on those notes and therefore cannot be supported by the attorney's fee provisions in those notes alone.

■ Moreover, the award cannot be sustained on the attorney's fee provisions in the guaranty agreements, for two reasons. First, both the bank's petition and motion for summary judgment expressly sought attorney's fees on the basis of the provisions contained in the promissory notes, not those contained in the guaranty agreements. Second, both guaranty agreements provided that if an attorney was used to enforce the guaranty, the guarantor would pay "a reasonable attorney's fee, which shall in no event be less than ten per cent of the amount owing." This precise language has been interpreted as requiring evidence of reasonableness. *See Yandell v. Tarrant State Bank*, 538 S.W.2d 684, 688–90 (Tex.Civ.App.1976, writ ref'd n.r.e.). Appellants' point of error as to the award of attorney's fees is sustained.

■ Finally, appellants contend that the summary judgment was improper as to the '$400,000 note because the bank failed to provide a true and correct copy of the note. Although the bank included a copy of the note itself in its motion for summary judgment, the note recites that it is secured by a deed of trust covering certain properties described in "Exhibit 'A'" and "Exhibit 'B'." The bank did not include these attachments in its motion. Appellants assert that the failure to include the attachments defeats the bank's summary judgment on that note.

Without addressing the substance of appellants' claim, we note that "Exhibit 'A'" and "Exhibit 'B'" to the $400,000 note were attached to the copy of the note included in appellants' response to the bank's motion for summary judgment. Therefore, the exhibits were properly before the court as part of the summary judgment evidence. The trial court did not err on this ground in granting the summary judgment.

The summary judgment is affirmed as to the bank's claim for deficiency, except the award of attorney's fees; the summary judgment is also affirmed as to Pentad and Whitney's counterclaim that the bank failed to hold a commercially reasonable foreclosure sale. However, the remainder of the summary judgment, relating to Pen-tad and Whitney's counterclaims for breach of the duty of good faith and fair dealing, common law fraud, and DTPA unconscionability, and relating to the bank's claim for attorney's fees, is reversed and those portions of the cause are severed and remanded to the trial court for further proceedings.

POWERS, J., not participating.